Good morning, ladies and gentlemen. We have a full calendar this morning, and although we try to be somewhat more liberal than other panels on your time, we don't have that luxury today, I'm afraid. So please watch your time. For those who haven't been in the Ninth Circuit or in this courtroom before, the clock starts at 20 and it runs all the way down to zero. So if you're the appellant and you want to reserve rebuttal time and it gets to be about 4, 3, 2, you are then eating into your rebuttal time because zero means zero. So just watch the clock. We'll try to help you on that, but sometimes everybody gets lost in the argument. The first two cases, United States v. Lueth and United States v. Prince, are submitted on the briefs, and the first case for argument this morning, Polar Bear Productions v. Timex Corporation. You may proceed. May it please the Court, my name is Bob Lukes. I'm here with Terry McDonald of Garlington Lawn in Robinson on behalf of the plaintiff and appellant, Polar Bear Productions. Also at counsel table with us is Robbie Lindsey from Polar Bear. We would like to reserve seven minutes of our time to respond to argument from Timex. Even though the jury awarded in excess of $2.4 million in compensatory damages, we are here today because significant errors at the district court denied our clients remedies that they're entitled to under the law. I thought you would have been happy. We're extremely happy. At the second trial, though, the Court precluded us from presenting evidence of Timex's willful conduct, as well as other evidence supporting state law claims. These rulings unjustly limited our clients' remedies. Okay, let's get to the state law claims. You've dropped your unfair competition claim, is that correct? No, what we have done is in the final pretrial order, we had enunciated both a statutory claim for unfair competition and a statutory claim for unfair competition. And a common law cause of action. The recent Ostendlin decision, I think, makes it clear that our statutory claim is eviscerated by the statute of limitations. But I think at the same time, it also makes it clear that Montana common law of unfair competition survives side by side, and a different statute of limitation would apply to that as not a liability created by statute. Montana's general three-year tort statute of limitations should apply. And there is indeed precedent in Montana for having a common law cause of action with a three-year statute and the statutory cause of action with a different statute of limitations. That is enunciated in the Brewington decision, which actually we did cite to the Court for another point. But in that situation, Montana common law for breach of the covenant of good faith and fair dealing has a two-year – excuse me, a three-year statute of limitations under the general tort statute, whereas what it was adopted by the legislature provides for a one-year statute of limitations for the statutory cause of action. The trademark cause of action under the state trademark law is one where the common law is also preserved. Is that right? Yes. So your argument is that that's also a three-year statute because it's not one that's solely created by statutory obligation? That's right. And the decision of Royal Insurance v. Rotemel talks about the basic test on what statute of limitation to apply is whether the liability preexisted at common law. And clearly what the Montana legislature did in 1979, what it enacted, our first trademark act, was to essentially codify the common law. And let me ask you as a practical matter, is the only reason that you want the state law claims is the possibility of punitive damages? Is that the only difference? That's correct. Okay. So let's just assume, and I'm not saying this would even be the case, let's assume we agreed with you on either the unfair competition common law or the statutory trademark claim, that your claims are not barred. Does that mean that the whole case would have to go back for retrial? No. I think what would be required is a trial on those particular issues. So, for example, if you reverse on the trademark claim, we would go back and proceed under the trademark claim and under Montana's punitive damage law with regard to willfulness and malice on those elements alone. So to the extent that the actual or implied damages were overlapping, you couldn't get double recovery? No, that's right. So basically it would end up being a punitive damages trial. Is that correct? That's correct. And we have affirmed in our pleadings to the court that we are not seeking any additional compensatory damages. Doesn't the compensatory damages have to be tried and presented to the jury? How could the jury assess, assuming that we said there was a mistake in dismissing your state law claims and you should have had an ability to pitch for punitive damages, how could a jury assess punitive damages without hearing the actual compensatory damage evidence? Well, I think there's no reason to disturb the underlying jury verdict that they can simply be instructed by the court that in a prior trial a jury has awarded $2.415 million. We are here today not about compensatory damages but solely looking at one or two issues, trademark infringement and whether those actions were committed willfully. Right, but in assessing punitive damages, I would think the jury would have to think about the quality and nature of the evidence on compensatory damages, as opposed to just being given a number determined by a prior jury. I could be wrong. Are you aware of any precedent where this has been done, where, like on an appeal, a compensatory damage verdict is stood and the case is remanded for a trial solely on punitive damages without retrying the compensatory damage? Because I'm not certain that can be done. Just to piggyback on Judge Goulden, the damages you now have are under federal statutory causes of action, correct? I'm sorry, I missed that. Your current damages are under federal statutory causes of action? That's correct. You have not tried the state common law or statutory claims? That's right. So I can't see how you could have just a punitive damages trial because under BMW and other cases, there has to be some relationship between the compensatory and the punitives. And the compensatory damages you have now aren't on a state law claim. I think the nature of the claims themselves, to some degree, are overlapping. And what we are talking about is, you know, the use of these protected materials by Timex to promote their products. So that was, of course, relevant to the copyright claims. But in this context, those same facts would be looked at with regard to trademark and unfair competition. I guess if we were to reverse on the state law claims, we'd just let the district court figure this out, right? I think that would be a determination for you as to, as a matter of law, whether a trial on these compensatory damages, again, would be necessary. I certainly don't believe that they are. For example, under Montana law, on our punitive damage statute, specifically requires two specific proceedings for punitive damages. First, you have the trial on the compensatory damages, and the second, you have a punitive damage. That's under 27-1-221. And certainly, the most typical scenario is that you have the same jury sitting on both trials. But I don't see that there's any reason why they cannot be informed as to what they do. Well, here's the problem in my mind, and I'm going to study it further. But if you had a judgment on the state law tort claims, and the court had just refused to let you try punitive damages, then maybe we could send it back and the jury could consider, in a new trial, punitive damages with a determination on the state tort claims and compensatory damages provided them. But can you get a state law punitive damage claim presented to a jury when the only thing you've proven so far is the Federal? Well, Your Honor, certainly we would have to prove liability on whatever it is that you send back. So if you send back the trademark claim, we are going to have to show that Timex was liable for violating Montana's trademark laws. And I'm trying to find, maybe you can tell me where the jury verdict is or which claims actually went to the jury. Did the Federal trademark claim go to the jury? No. That was taken away under statute of limitations. Right. So how could you even possibly think you have comparable state trademark claims if you don't even have a Federal trademark judgment? The – and I'm sorry, maybe I'm missing the point, but the nature of the underlying acts and what we're talking about. I know they're all the same, but, you know, that's why you have different causes of action. So you have a copyright judgment, correct? Yes, that's right. Which is very distinct from a trademark judgment. So how could you use the judgment on a copyright to bootstrap your way to a trial on punitive damages bypassing a state, for example, trademark substantive claim or unfair competition claim? I think if you look at the nature of damages that are issued in a copyright claim and a trademark or unfair competition claim, we are talking about the exact – Damages might be the same, but the liability hasn't been established under those claims. That's right. And that's what I'm saying. We would have to retry all liability issues. And if the jury finds, yes, that there is liability, we stand up and say our compensatory damages are satisfied. I've been listening to this, and I've got a basic question because I'm a little bit lost. Sure. In response to your 28J letter, the Timex folks have said that you didn't plead a common law cause of action. The common law, that's correct, as far as – Excuse me. And that ties into what we're talking about here. If we don't straighten out this procedural basic facts in the beginning, what you're going to do is you're asking us to allow punitive damages on Federal claims. The only way you can get there is to get these State claims in and out. Did you plead a common law cause of action or State trademark claim? The State trademark claim was at issue ever since the original complaint. I didn't ask that. I asked if you pled it in the complaint. They say you never pled it. I'm sorry. I thought you said the trademark. We've got two causes of action, right? Yeah, the statutory State trademark claim, which is now barred. No, the State unfair competition claim is now barred. Okay. The unfair competition common law cause of action was not in the amended complaint. At that time, all we had pled was the statutory cause of action. However, this issue was raised and briefed to the Court prior to the first trial and in the final pretrial order before the first trial, we did include. It hasn't been in your complaint in the second trial, which is the one that's on appeal now. Well, it was in that pretrial order as well, Your Honor. But that's the same pretrial order where the judge said he thought he ruled against you on putting in the attorney's fees on the copyright claim. So just to get it straight here, to answer Judge Brunetti's question, the answer is no, there was no common law unfair competition claim in either complaint. That's correct. And the only place it appears is in a pretrial order. In the both final pretrial orders. And in the second pretrial order, when you went to trial, that's the one where the judge said, no, you had twice to amend it, and I'm not going to let you put in the copyright claim now. So we would have to determine or send back whether or not the presence in the pretrial order was enough. That's correct. Okay. Now, on the state trademark claim, that was pled in the complaint? Yes, it was. And that goes all the way through. That's the statutory trademark claim? Yes. Is there a common law trademark claim pled in either complaint? Not in either complaint, but, again, we added it in the pretrial order. So it was in the originally statutory only. Let's go further then. It's in the pretrial order. Was evidence presented? Was the issue attempted to be put or put before the jury? Was there a request to amend the complaint to conform with the evidence? Did any of that happen? It did not because the Court granted Timex's motions prior to the first trial. What's the effect of having it in the pretrial order? It didn't amend the complaint, did it? Or did it? Well, certainly if the judges, for example, on the trademark claim, Your Honor, if the judge is incorrect and improperly applied the statute of limitations, we had been simply attempting to preserve our cause of action for this very day that the Ninth Circuit could come in and say there's an error there, we need to go back. Okay. Let's go back. You appealed whether or not the attorney's fees claim should have been excluded because of the pretrial order, but you didn't appeal whether the common law trademark or unfair competition claims should have been excluded solely on the basis of the pretrial order, correct? It's because they never were, Your Honor. They were excluded for other reasons. Statutory. Excuse me, for statute of limitations reasons. Yeah. On the trademark was the statute of limitations, and on the unfair competition was the standing issue, actually. Do you want to reserve the rest of your time? You're at six minutes. I guess I would like to make a short, continue on for just a moment. I would like to say that to address one aspect of Timex appeal, certainly the causal nexus is very important in this case. Prior to the second trial, we had the benefit of the Court's decision in Mackey v. Reiser, and we believe we did exactly what Mackey required. The jury was properly instructed, and that instruction is not on appeal before this court. What Timex did was to take Polar Bear's copyrighted film, a film that from its inception was specifically designed in part to promote Timex Expedition watches. It paid $25,000 to have the Timex Expedition name and its Expedition watches prominently displayed in its film. And after telling Polar Bear that it would not do so, Timex then used the film and the infringing loop tape illegally for years before hundreds of thousands of professional buyers, again, specifically promoting its Expedition line of watches. We believe that if this case is not proper for an award of indirect profits, I think it's difficult to imagine a case that is going to have so much of a causal connection. We have statements from Timex saying in writing that this was an unqualified success and that they had received a significant return on their investments. The issue is whether there's sufficient non-speculative evidence to support the causal relationship, as I understand Montana law. Copyright law under Mackey v. Reiser, yes, Your Honor. And I guess that turns on what the experts said and what the reasons were. I guess I would respectfully disagree and say that what we were required to do under Mackey was to satisfy that causal nexus. And the best evidence, again, comes from Timex. Statements from Timex that Patek West helped to build the Timex trademark, that it changed their brand image, that they felt it was important from a marketing standpoint, that the Timex brand was stodgy and old-fashioned at that point, and that by showing Patek West's video at Trade Show, they were trying to put a new spin on Timex to rebuild their brand, to get to the people at the top of the pyramid. Those are all statements from Timex. Once we show factually that causal connection, the burden of apportionment under 504B switches to Timex. They have to come forward at that point and apportion. So what we did with Professor Hansen was over and above that to try and educate the jury and to provide them some guidance. But certainly just as in Andreas v. Volkswagen, we did not need an expert. We could have relied on that causal nexus alone, placed the burden on Timex to apportion, and then simply argued to the jury. Exactly. It is the defendant's burden to both offset and apportion, correct? Yes, it is. And I think with that said, I would like to reserve the rest of our time. Thank you so much. Good morning. May it please the Court, my name is Roger L. Zissou. I don't want to interrupt your argument, but could you, somewhere along the line, could you straighten out this discussion we had with regard to the pleadings, the status of the pretrial on the trademark and unfair trade pact? I represent, yes, defendant Appellee of Cross Appellant Timex. Yes, it's not pleaded in the complaint, and it's worse than that. What is it? The common law, any common law claims, there are none in the complaint. It is referred to in the plaintiff's statement in the pretrial order. It is about, it's at ER 20 at the top of the page, and it's mentioned. There's a reference to common law. However, in a response brief that the plaintiff served and filed, on February 21, 2002, they admitted that they had not pled a common law claim. And that is in record docket number 96, which is listed at, in the docket sheet, at ER 24, 96 is the docket sheet, and we have copies of that brief we could hand out or it can be checked, but they did not. So the only thing is they, they unilaterally, the plaintiff referred to that in the pretrial order in the plaintiff's statement. That's followed by a defendant's statement, and there are other provisions of the pretrial order, which is. Did that pretrial order have a set of agreed points that the parties agreed would be tried? Not on that. Okay. There are some other statements in there, and there is a signature of the judge at the end. Is there anywhere in the pretrial order that Timex objected to the inclusion of the common law claims? I don't think, I don't think so. Not in the pretrial order. Signed the pretrial order. It was submitted and the judge signed it. Both sides. And both parties signed it. Yes. Counsel. Yes. Well, even if there weren't common law claims, we're left with the state trademark claim, and I have a question on that. Well, we argue on that that it's barred by the two-year statute of limitations. Right. But the question I have is the way the Montana law seems to read is since the trademark law didn't eviscerate common law, and since it's not a statutory right that's based solely upon a created statutory right, does that not then revert to the typical three-year tort statute under Montana law? The district judge decided it did not. I understand you, but that doesn't mean they're not always right. Okay. We believe he was right. But in addition, if you look at their trademark claim, if you take the label away, it's entirely based on you copied, you reproduced derivative works, you copied this without authorization. It is a relabeling, a bald relabeling of a copyright claim with a labeled trademark. And because of that, if you look behind that, it is preempted. As is the punitive damage claim. Well, if you plead on the fact that that's another issue that the district court would figure out as to whether they've stated a claim. The district court never ruled they didn't state a claim. The district court ruled that it was barred by the statute of limitations, correct? Right. And that's what's on appeal. Yes. We, as another ground of confirmance, we argue if you look behind it, and there's no statement about the film serving as a trademark. There's no proof that anybody ever got confused as to thinking that somehow they were associated with Timex watches. They're none of the attributions of trademark. There's no proof or allegation anywhere on the record of secondary meaning in relation to them that somehow or of confusion. There are no surveys. There's nothing. It really is just another attempt to have another claim in case the copyright judgment survives. And the punitive damage claim is nothing more than trying to. You know, all I can tell you is what I read in the complaint, which basically on its face seems to allege a trademark infringement based on the Mark Paddle request and saying that it causes confusion as to source, origin, et cetera. So. That's the boilerplate. But if you read what it. I understand. It incorporates the language of copying, the language of preparation. Well, but that's not. Oh, it is in the claim. That's the factual basis. Right. But the district court didn't. Stop just a second. Do you want to hear the question or do you want to keep talking? No, I want to hear it. Okay. The question is this. Did the district court rule on the substance of the trademark claim as a claim? I don't think so. I do have to correct the prior statement. In the pretrial order, there was an objection. Okay. It's at excerpts from the record. Okay. Where defendant.  I didn't hear it. There is an objection to the addition. Where? E.R. 28. 28. It reads, defendant objects to any new theories, claims, facts or matters raised in plaintiff's proposed second amended complaint, including but not limited to deceit, oral assurances and so forth. But. So that would include all the common law claims plus that copyright. I think so. The attorney's fees. Okay. So. We're back to the. We're just going to say for now we'll put those over here because they never made their way into the complaint. But I'm trying to understand on the trademark complaint, on the trademark case, if we were to determine that the judge was wrong as a matter of law. Statute. Statute. Shouldn't we just send it back and let him sort out on a motion to dismiss whether or not there's a claim, or maybe it's a summary judgment at this point because now you've got facts, I guess. Or you have some facts. I don't know if they're disputed or not. Maybe that's the best thing to do. That's all. Don't fight with us. That's all I'm trying to ask. Okay. Well, I have another question. And it's basically the same question I asked Mr. Loops. I'm having trouble understanding the correct procedure here if we were to decide that the judge made a mistake in dismissing a State law trademark claim. I'm not saying I'm deciding that, but assuming we thought that claim had to go back, can a State punitive damages claim be tried without trying damages on the State law claim? I don't understand how that could be done. And if you tried damages on the State law claim, then what if they're different damages than what were done earlier? So I'm having a little trouble understanding that, basically leading me to wonder whether if we were to want to reverse on the statute of limitations, if the plaintiffs have to have a choice between retrying their damages in total or not trying punitive damages. I think they would have to retry an entire new case because the record, this record on copyright infringement does not address the basis for compensatory or punitive damages under a trademark theory. If that kind of trial had taken place below, my client would have argued that having purchased 1,250 copies of the video under a contract provision that says they could be used for promotion, and the fact that salespeople went out and used the video for promotion by showing it and using it in a loop tape at a booth at a trade show, that that wouldn't be the basis for punitive damages or any intentional mistake. That would have been a basis for negligence. It might have been wrong. And furthermore, it might have been right. That we lost on that issue, and we were not allowed to introduce into that trial any evidence that might have indicated that it wouldn't be unusual for salespeople to make that kind of mistake.  Ginsburg. Well, wouldn't the – what you have now is a judgment against you on the copyright claim. But if there were a – if there were a State trademark claim, wouldn't that just go back and be tried as an independent claim? Absolutely. And as you say, first of all, you might get rid of it on motion to dismiss or summary judgment. And if you didn't, then you would have a trial just on the trademark claim in which you'd get to produce all this evidence. And you still might be found not liable, but even if you were, as you say, you have all this evidence. Right. We don't know. They gave it to us, and that's why we used it. We think we'd win on that, but we could lose. Sure. We've lost before. But it wouldn't – it wouldn't negate the copyright judgment. It would just be a new trial on one claim.  Is that right? It would have to be something else. So I think I agree with you, Your Honor. Now, the punitive damage claim is based on a Montana statute that says for egregious conduct, the court can award punitive damages. But when you listen to counsel for the plaintiff and you look at the record, the egregious conduct is the copyright infringement. And to the extent that a State law would add a punitive damage element for the violation of the Federal Copyright Act, which itself has certain provisions in which there can be increased damages, statutory damages for willful conduct, but there is no other punitive damage in the Federal Copyright Act, I think that's inconsistent with the Copyright Act, and I don't think it's permissible to have the States going around and adding new remedies for Federal violations of law when the Federal law    I think it's a mistake to say that if there is a punitive damage in Federal court in Montana, that would also be a legal issue as to whether there even is a factual basis for punitive damages. And if the judge ruled on that in advance and said there isn't, then you'd basically have a State trademark case with some damages which may or may not overlap your copyright infringement, would be that Montana can add punitive damages for that alone, I don't think that would be, that's preempted. Now I'd like to, I guess, address our cross-appeal. And for some brief background, under Section 504B of the Copyright Act, a copyright owner can recover the actual damages suffered as well as the defendant's profits attributable to the infringement. Actual damages are usually measured by the loss or the injury to the copyrighted work, which is in turn measured by the lost profits of the copyright owner that would be a direct infringement case. Where the defendant is selling a copy of the plaintiff's product, the sales are considered to have been illegally diverted to the defendant, they should have gone to the plaintiff, but the plaintiff can only recover the plaintiff's profits. That, by the way, is a different thing than having the defendant disgorge its profits. Another measure of the injury would be where the defendant is not a direct infringer, is to look at the plaintiff's lost licensing revenue. And in the absence of direct proof of lost licensing revenue, the plaintiff can recover a reasonable license fee. But there's a rule on that, there's a real no-no, you can't establish what a willing buyer and a willing seller would have paid for a reasonable license fee by basing that evidence on what the plaintiffs say they would have charged. It has to be objective, based on something in the marketplace, such as prior license fees. And on defendant's profits, the statute says that a plaintiff need only introduce the defendant the infringer's gross revenues and attributable to the infringement. And once that occurs, then the defendant must come forward and prove the deductible expenses, as well as elements of profit attributable to other factors. But there are rules on that, too. How here do you, in a case like this, determine the amount of revenues attributable to the copyright infringement? You usually Here you weren't, you're selling Timex watches. Yes, right. And the copyright infringement, I guess, has something to do with showing the paddle quest. Well, the statute says you first have to look at the defendant's gross revenues and make a calculation of what's attributable to the infringement. Because that's a very difficult thing to do in the context of indirect profits, as here, you need an expert. But the expert has to follow what's prescribed by the statute. The expert has to first give an opinion based on some expertise as to what effect this had on purchasing decisions, on gross sales for the infringing, you know, for example, for the watches as a result of the advertising or promotional. You can't come at it the way Mr. Hansen did. The rule in this Court, and really every other court, is there has to be a legally sufficient, non-speculative basis to establish a causal link between the infringement and profits. And the way the statute really, the methodology prescribed by the statute, is to start to look at the defendant's gross sales revenue, purchasing decisions. And when we look at the expert, Mr. Hansen, he gave no evidence on that subject. He was not expert in that. He was the wrong expert, and he testified on the wrong topic. Because he admitted, I'm not talking about sales. He admitted, in fact, the statute, the reason the statute requires you to talk about sales, purchasing decisions and the defendant's increased gross revenue due to the infringement, it's so that the defendant can present a number to deduct from that. This plaintiff never put a number in evidence and never tried to, which came up with an increased sales or gross revenues due to the infringement. And my client couldn't. Maybe I misread. I reread his testimony in the exhibits. There was this argument about net and gross. And I thought that he was, and you said, well, no, you should use Sidestep. And he says, no, I use Timex, not Sidestep. I guess it's called Sidestep. Is that right? Split second. Excuse me. Split second. That's a small division. That's a small division. Sidestep.com. Split second. So I read him as saying, look, I looked at that. I looked at what branding did to their sales, and I tried to figure out what indirectly this would be because you don't have a direct line. And he gave his opinion. And so I was having, I thought he linked it up. Now, it might be weak. He said, I'm not talking about sales. He said, I'm talking about branding. He said that at our SER, that's the supplemental excerpts, 199, at the trial transcript 443. He also said when we asked what about the deductions, he said, I didn't get into that. He's not required to do that, correct? No, he's not required to. You are. We have the burden of it, but we can ask him, and they can present it. Right. And when we asked him, he said, I didn't get into that because that's apples and oranges. But didn't he show, and help me here, his theory was that the branding argument was that because the brand was enriched, if you will, that there are more sales. And he showed the sales of these watches and the numbers of watches he sold and all that sort of thing. But no, he never said that sales increased. The whole brand premium theory, the notion of it, and he explained it. It was a price increase. It's an attempt to evaluate the effect of branding. Yeah, but he said there was a price increase in the product. I don't remember what it was. But he didn't say that that was caused by these videos. And he couldn't. And he has no expertise in that. He used this branding theory, though, didn't he, to try to say that branding is what caused the increase. I think that's fair. No, he did not. He said I looked at the increase and I decided. That that was caused by branding. Right. There is no link. There is no causal link. And every time he was pressed on that, he basically said that's apples and oranges. This method is not the preferred method for anything. There has never been a decision that said it's a preferred method for anything. It needs to be a preferred method if it's a reasonable, it's a possible reasonable method, and then the jury gets to decide all the things you cross-examine them on. Well, since its only purpose by definition is to study the effect of branding and sometimes promotion on whether a defendant or whether a company can raise its price and get away with it, that may be very interesting as a marketing phenomenon. It may be the basis on which a company decides we're going to try to raise our price next fall and see if we can do it, but it doesn't mean and has nothing to do with whether these videos increase the sales of these watches. Now. You're saying that that accused then the judge, our review standards, I understand, is abuse of discretion. The judge aligned this evidence in. Is that right? Well, there are a couple of review standards that come in. There's abuse of discretion in permitting the testimony, but at the end of the day, we have the standard that there must be a legally sufficient connection between the infringement and the profits. Was there a motion to strike or a motion for direct avertisement? This record, and I'm out of time, unfortunately. I'd like to go on, is replete with motions to strike the testimony of both experts, with motions at the end of the case, you know, at the end of the plaintiff's case, with motions before it was submitted to the jury, with motions at NOV afterwards. Our brief sets this forth. This theory has just nothing to do. It doesn't purport to have anything to do with what had to be proved, and it doesn't meet the federal requirements. You've got to say from somebody who has experience not in marketing, but in calculation of damages, that this increased sales, purchasing decisions were affected. Purchasing decisions, not somebody's ability. You know, you can increase the price for any reason. You can increase the price because you're popular. You can increase the price because you had to, because your cost of goods sold went up. It's just got nothing to do with the issue in the case. And the expert was an expert on the wrong topic. All right. We'll hear back from Paul or Barry again. Thank you. Would you go right to the heart of his argument, and that is that this branding premium doesn't have any place in the copyright law because you didn't really show a link between claimed lost sales or increased sales and PaddleQuest. Okay. And I think the place to start certainly is at 504B, and what does the statute say about our obligation? Once the causal link is established, we have to show gross revenues related to the infringement. The gross revenues from the Expedition watches were in actually by stipulation for the years that were at issue. And what Professor Hansen did was not only educate the jury on marketing, branding, and the importance of these trade shows and the significant event that PaddleQuest proved to be over a period of years for Timex, but how that event, through the brand premium method, enabled them to increase their profits. And those were his testimony with regard to branding directly talks about their increased capacity for sales. When you look at the brand premium calculation, it is based on sales, but his calculation again goes to their ability to raise the price on these watches due to this marketing event. Now, let's just step back. The actual numbers of gross revenues contemplated by Section 504 are by stipulation. Yes, they were in. He didn't need to testify to those. That's right. He certainly did testify to them, but we had internal documents from Timex that showed approximately $249 million worth of sales through the years at issue for that particular watch in the U.S. His argument was that the specific branding increased the sales, and he tried to make an estimate of what that would be. It increases their capacity to charge more for the watch, which in turn goes to profits. And what's at issue under the 504B is not sales but revenue. Did he testify that they had increased their price they charged for the watches? Yes, he did, and that was documented. Through the years, I believe, those four years, the price went up approximately $1.32. Did he testify as to any causal relationship between their price increase and the use of the copyright? Absolutely. That was his ultimate conclusion was that using the brand. That was his conclusion, but what did he say that showed that the price increase was caused by swiping the copyright? What he did there was extensively research Timex marketing history and what was going on at that point. And through the brand premium method and its application, there's an attribution at the end as to what parts go to certain marketing efforts. That's the whole purpose of the brand premium method is to identify what's the revenue from a particular marketing campaign. And through that, he identified that of that $1.32, 50% or 61 cents was attributable to PaddleQuest. Let me ask this. I was looking around in the record. Other than Timex's cross-examination of Dr. Hansen and I guess also Mr. Sepp, did Timex offer anything in terms of an offset against its revenues or any allocation or any testimony that said that there should be no allocation because there's no causation? I think what Timex did was a few things. One, it presented through tax records general expenditures. The other thing that it tried to argue was that, oh, this should really be limited to split-second sports, that it should be attributed to those sales only. But, of course, we had contrary evidence that, in fact, there were major retailers at these trade shows and that they would take them back to their headquarters where the sales were ultimately made. I think they also talked about that, gee, we had $4 million a year of other advertising that we did. Now, they never presented any of those advertisements to the jury, but they certainly made that argument that, gee, our other advertisements should be. Did they present evidence they did $4 million of other advertisements? Only not written documents, but through oral testimony, yes, they did. So that was all in front of the jury. The jury got to look at all the gross revenues and potential deducts and Dr. Hansen and everybody, and then the jury came out with this number of, what, 2.415, which is approximately. . . What I'm worried about is whether the expert gave a sufficient basis to show the causal connection that Montana law requires. So what did the expert say as to why he thought that the increase is based on this PaddleQuest video use, rather than other advertising or other market conditions or any of the myriad factors that could affect marketing and pricing? I think, first of all, again, I would point out that our best evidence of this causal connection was through representations by Timex about how successful it was, their own written testimony that they had received a significant return on their investment. That seems to suggest they got some benefit from it, but as to the quantifying of it. . . Right. Well, and again, if that doesn't really help on the causal relationship between the number he gave and what they did, I don't. . . Well, and again, I guess I see it as two pieces of the puzzle. One is that that causal connection is satisfied through the factual statements and essentially the concessions and admissions of Timex, switching the burden of apportionment to them. Again, at that point, we did try and go the extra yard with Professor Hansen to try and quantify it to some degree. I think that you've answered our question on that, unless there's any further questions. No, I understand. I think we understand your argument and also the argument of Timex. Thank both counsel for your argument. No, we're concluded. The case of Polar Bear v. Timex is submitted, and the next case for argument is Hyenga v. Memphis School District. No, the procedure in this circuit and every other circuit is that the appellant. . . minutes per side. And we do have your briefing, which is quite extensive in the record, so thank you. Hyenga v. Memphis.
judges: Brunetti, McKeown, Gould